## COUNT ONE FAILS TO ALLEGE CONDUCT THAT "OTHERWISE OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING"

Count One fails to allege an *actus reus* that falls within 18 U.S.C. § 1512(c)(2), and so it must be dismissed. *See Miller* mem. op. at *15 (dismissing obstruction count in a January 6 case where Indictment did not allege or imply that defendant "took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence Congress's certification of the electoral vote.").

Section 1512(c) of Title 18 provides:

> (c) Whoever corruptly—
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1512(c)(2) prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," where "otherwise" is to be read in conjunction with the whole of 1512(c) and within its broader context. As Judge Nichols found in the attached opinion and as former Attorney General Bill Barr has explained, Supreme Court case law demonstrates that this is so. Relying on *Begay v. United States*, 553 U.S. 137 (2008), and *Yates v. United States*, 574 U.S. 528 (2015), the former Attorney General wrote:

> [I]t is clear that use of the word "otherwise" in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word "otherwise" does no work at all and is mere

surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word "otherwise" out of the statute altogether. But any proper interpretation of the clause must give effect to the word "otherwise;" it must do some work.

Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and Assistant Attorney General Steve Engel of June 8, 2018 [hereinafter "Barr Memo"] at 4 (emphasis omitted).[2] After discussing *Begay* and *Yates* and how those cases emphasized that "specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause," he continued,

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction – *i.e.*, impairing the availability or integrity of evidence – but cause this impairment in a different way than the enumerated actions do. Under this construction, then, the "catch all" language in clause (c)(2) encompasses any conduct, even if not specifically described in 1512, that is directed at undermining a proceeding's truth-finding function *through actions impairing the integrity and availability of evidence*.

*Id.* at 4–5 (emphasis omitted) (emphasis added).[3] The similar structure of the residual clauses in Section 1519, at issue in *Yates*, and Section 1512(c) allows their meanings

---

[2] Available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf (last visited July 12, 2022).

[3] Although *Yates* was a plurality opinion, Justice Alito's concurring opinion also supports the former Attorney General's and Mr. Seitz's position limiting 1512(c)(2) to impairing evidence. According to Justice Alito, the list of nouns, list of verbs, and title in Section 1519 all show that the statute in question did not reach the conduct of the defendant in that case. *Yates*, 574 U.S. at 549 (Alito, J., concurring). Regarding the nouns, Justice Alito considered the application of both *noscitur a sociis* and *ejusdem generis* to find that the term "tangible object" should refer to "something similar to records or documents." *Id.* at 549–50. In this case, Section 1512(c)(1) refers to "a record, document, or other object." There is no allegation that Mr. Seitz interfered with any such item. 1512(c)(2) should be read to comport with 1512(c)(1)

to be interpreted similarly. Although 1519 and 1512(c) differ in that the residual clause in 1519 is not separated out by a line break, semicolon, or new section, while 1512(c)(2) is its own subsection, this does not resolve the breadth of "otherwise" and leaves ambiguity. *See Miller* mem. op. at *10–11. When ambiguity remains in a criminal statute after using traditional tools of interpretation, the canon of lenity applies. *See infra* pp. 20–22.

The former Attorney General noted that case law indicates the residual clause should only apply to "attempts to interfere with, or render false, evidence that would become available to a proceeding" or "to prevent the flow of evidence to a proceeding." Barr Memo at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation)); *see also, e.g.*, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (providing false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making false statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th

---

and so should only apply to evidentiary objects. Justice Alito then looked at the verbs and noticed some glaring problems when trying to apply those verbs to any tangible object. *Id.* at
551 ("How does one make a false entry in a fish?"). Because there was no evidence "obstruct[ed], influence[d], or impede[d]" by Seitz (nor will there ever be), the verbs in Section 1512(c)(2) have no object to reference. Finally, Justice Alito pointed to the title of the statute: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy" and noted "This too points toward filekeeping, not fish." *Id.* at 552. The title of Section 1512, "Tampering with a witness, victim, or an informant," is likewise limited to certain manners of interfering with evidence, as well as certain types of evidence, in adjudicative or tribunal- like proceedings. This statute's title clearly supports a finding that it was not intended to apply to all forms of obstructive conduct.

Cir. 2007) (convincing others to falsely claim ownership of a firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) ("attempt[ing] to orchestrate" grand jury witness's testimony by sending notes to attorney who in turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (obtaining false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 22–23 (2d Cir. 2019) (destroying evidence on several USB drives and iPod); *United States v. Burge*, 711 F.3d 803, 808 (7th Cir. 2013) (providing false answers to interrogatories in a civil lawsuit). As the former Attorney General correctly observed, "the most natural and plausible reading of 1512(c)(2)" requires conduct that impairs the integrity and availability of *evidence*. Barr Memo at 4.

This is entirely consistent with the legislative history of Section 1512(c)(2), as noted by the former Attorney General and by Judge Nichols in *Miller*. *See Miller* mem. op. at *13–14. Section 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "[a]n Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745 (2002). Subsection (c) was added in part to ensure that there would be liability for those who destroyed records before an "official proceeding" had convened, even if they did not foresee one convening or if they had acted themselves, as opposed to causing others to act. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005). This subsection closed a loophole in 1512(b)(2), which only criminalizes directing others to obstruct proceedings and so allowed Arthur Anderson LLP to evade liability for destroying

documents in the wake of the Enron scandal. *See id.*

The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 2 (2002). The Committee Report noted that much of Arthur Andersen's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6–7. Thus, the legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws *relating to the destruction or fabrication of evidence* and the preservation of financial and audit records.'" Barr Memo at 5 (quoting S. Rep. No. 107-146, at 14–15) (emphasis added). As Judge Nichols put it, "in the wake of the Enron scandal, Congress was faced with a very specific loophole: that then-existing criminal statutes made it illegal to cause or induce *another* person to destroy documents, but it did not make it illegal to do by oneself. Congress closed that loop by passing subsection (c), and *nothing in the legislative history suggests a broader purpose than that.*" *Miller* mem. op. at *14 (second emphasis added). Likewise, the former Attorney General also observed that "reading the residual clause as an all- encompassing proscription cannot be reconciled either with the other subsections of

§ 1512, or with the other obstruction provisions in Title 18 that must be read *in pari passu* with those in § 1512." Barr Memo at 5.

If this Court were to interpret Section 1512(c)(2) as the government wants it to—as an all-encompassing catch-all, including something as unique as protesting the election certification proceedings—"clause (c)(2) would render all the specific terms in clause (c)(1) surplusage; moreover, it would swallow up all the specific prohibitions in the remainder of § 1512—subsections (a), (b), and (d)." *Id.* And, as Mr. Barr continued, "[m]ore than that, it would subsume virtually all other obstruction provisions in Title 18. . . . It is not too much of an exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause." *Id.*; *see also Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). This is supported by the narrow scope of other Section 1512 clauses, such as the focus in subsection (a) on use of force or threatened use, in (b) on verbal conduct like threats, in (c)(1) on document destruction, and in (d) on intentional harassment. Were 1512(c)(2) to be read broadly, it would subsume these other clauses.

In sum, the canons of construction employed by the Court in *Begay* and *Yates*, the text, structure, and practical application of Section 1512(c)(2) as demonstrated in caselaw, and the legislative history all support a holding that the "otherwise" clause in § 1512(c)(2) must be construed in a similar vein to the terms that are in clause one. Thus, in order for Count One to sufficiently allege a violation, it must allege that Mr.

Seitz took "some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding." *Miller* mem. op. at *15. Because no such allegation exists in the Indictment here (nor can there ever be one), this Court should adopt the reasoning applied by Judge Nichols in *Miller* and dismiss Count One of the Indictment alleging a violation of § 1512(c)(2).

## THE CERTIFICATION OF THE ELECTORAL VOTE WAS NOT AN "OFFICIAL PROCEEDING"

### I. Section 1512(c)(2) prohibits obstructing only "official proceedings," which are tribunal-like proceedings relating to the administration of justice.

Congress defined the term "official proceeding" for purposes of Sections 1512 and 1513 in Section 1515(a)(1), as follows:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

The language of the statute suggests that the term "official proceeding" refers to tribunal-like proceedings relating to adjudication, deliberation, and the administration of justice, all features which the electoral count lacks. As such, though the counting of the electoral vote takes place before Congress, it is not an "official proceeding."